UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

ZACHERY R. LEAVER,

    Debtor.

Case Number: 20-11122-12

---

## **DECISION**

Zachery R. Leaver ("Leaver") filed a voluntary Chapter 12 petition on April 21, 2020. About two months later, Hillside Dairy ("Hillside") filed a proof of claim in the secured amount of $106,448.84. The basis for the claim was a boarding lien.[1]

Leaver filed a plan on July 20.[2] Shortly after, a stipulation between Hillside and Leaver providing for the release of livestock was filed ("Stipulation").[3] The Stipulation also contained an agreement that Hillside would have an administrative claim and that it would retain its lien rights. The Stipulation was approved by the Court on July 31.[4]

Hillside objected to Leaver's plan a few days later arguing the plan did not provide for its lien as stipulated or to treat the claim as an administrative expense.[5] It said it released the animals relying on the terms of the Stipulation.

---

[1] Proof of Claim No. 12-1.
[2] ECF No. 24.
[3] ECF No. 28.
[4] ECF No. 31.
[5] ECF No. 30.

Leaver then objected to Hillside's claim.[6] Leaver filed an amended plan.[7] The amended plan does not, however, change the treatment of Hillside.

The parties filed a joint stipulation of facts.[8] The parties have filed briefs and Leaver's primary secured creditor, Wisconsin Bank & Trust ("WB&T"), filed a letter in support of Leaver's position. Confirmation of Leaver's amended plan has been held in abeyance pending a decision on the Hillside claim.

## BACKGROUND

Leaver is a dairy farmer. He owns and operates a farm.[9] Leaver has perfected security agreements with WB&T and Farm Service Agency for business loans.[10] Those loans pre-date Leaver's transactions with Hillside.

Starting in 2017, Leaver delivered dairy cows and youngstock he was unable to care for to Hillside.[11] On the petition date, all of his livestock was either located at Hillside or with Leaver's father-in-law.[12] Until about May 20, 2020, Hillside "housed, cared for, milked and managed Leaver's dairy cows and youngstock."[13]

Hillside has filed a claim in the amount of $106,448.84. Most of the claim is for pre-petition amounts. Somewhere between $2,593.50 and

---

[6] ECF No. 34.
[7] ECF No. 38.
[8] ECF No. 49.
[9] ECF No. 49 at ¶ 1.
[10] ECF No. 49 at ¶ 2.
[11] ECF No. 49 at ¶ 3.
[12] ECF No. 1, p. 15 at ¶ 47.
[13] ECF No. 49 at ¶ 4.

$4,882.50 may be for post-petition services charged at the rate of $2.10/head/day.

There were not less than 65 head located at Hillside when possession of those animals was given to Debtor.[14] According to Leaver's schedules, the number was actually higher. It was:[15]

    (110) Milking cows = $900 each
    (20) 300lb or less cows = $200 each
    (20) 500-900lb cows = $550 each
    (5) Springers = $1,000 each

So according to Leaver the value of the livestock in Hillside's possession on the petition date was about $119,000. In other words, Hillside was fully secured on the petition date because it had cattle in its possession of a value that was greater than any alleged claim of Hillside.

Leaver and Hillside stipulated to the release of the livestock to Leaver.[16] The Stipulation says Hillside "will release any animals in its possession owned by" Leaver. It also says Leaver agrees to treat "any outstanding bill by [Hillside] as an administrative expense in his Chapter 12 plan." Finally, it promised that Hillside would retain its lien on the animals being released.

The parties say the livestock was returned to Leaver on about May 20, 2020.[17] Based on the Stipulation, the logical inference is that the scheduled livestock was in the possession of Hillside in late May 2020.

---

[14] Claim No. 12-1, pp. 5 and 14.
[15] ECF No. 1, p. 15.
[16] ECF No. 49 at ¶ 6.
[17] ECF No. 49 at ¶ 4.

Hillside filed a proof of claim in the amount of $106,448.84 asserting its claim was fully secured.[18] The Stipulation releasing the cattle was approved on July 31.[19] On August 24, Leaver objected to Hillside's claim asserting that the amount owed to Hillside is in dispute because no contract rate for caring for the animals was ever agreed upon between the parties.[20] The objection simply challenges the amount of Hillside's claim. It does not raise the questions of Hillside's secured status or its administrative priority that are now the basis for Leaver's arguments.

## JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The issue before the Court is a claim asserted by Hillside against the bankruptcy estate arising out of post-petition actions related to an agreement between Debtor and Hillside and could be considered, at least partially, a request for payment of an administrative expense pursuant to 11 U.S.C. § 503. It falls within the parameters of "allowance or disallowance of claims against the estate," as well as "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2) (A), (B), and (O).

---

[18] Proof of Claim No. 12-1.
[19] ECF No. 31.
[20] ECF No. 34.

## DISCUSSION

### A. STATUTORY LIEN RETENTION AND PERFECTION

Wis Stat. § 779.43(3) in relevant part states:

> [E]very keeper of a garage, marina, livery or boarding stable, and every person pasturing or keeping any carriages, automobiles, boats, harness or animals, shall have a lien thereon and may retain the possession thereof for the amount due for the keep, support, storage or repair and care thereof until paid.

A required element under the state statute to have a validly perfected lien is possession. The Wisconsin Court of Appeals has held that "[i]f the lienholder elects to relinquish possession, the lien is no longer necessary to justify possession, and the lien is lost." *Premier Cmty. Bank v. Schuh*, 2010 WI App 111, 329 Wis. 2d 146, 150-51, 789 N.W.2d 388, 390.

Wis Stat. § 779.43(3) requires possession for perfection. Hillside surrendered possession, so it no longer holds a secured claim based on its pre-petition or post-petition statutory lien.

The parties entered into a Stipulation containing specific terms for the treatment of Hillside. The Stipulation specified plan treatment for Hillside's claim as an administrative expense. It purported to enable Hillside to retain the same lien rights that existed at the time of the Stipulation.

Stipulations entered into freely and fairly and approved by the Court are not to be set aside lightly. Stipulated agreements avoid costly and time-consuming litigation. *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998); *In re Argose, Inc.*, 372 B.R. 705, 708 (Bankr. D. Del. 2007).

5

Here, the Stipulation enabled Debtor to obtain possession of the livestock and placed WB&T back in first secured position on the released livestock. In consideration for Hillside's release of the livestock, Debtor agreed that Hillside would continue to have lien rights in the released cattle and that its claim would be given certain priority treatment in the plan.

Stipulations may be nullified by a court for good cause if the interests of justice require it and the parties can be restored to the positions they held before entering into the stipulation. *Waldorf*, 142 F.3d at 618; *Argose*, 372 B.R. at 708. The failure to enforce stipulations undermines the willingness of parties to enter into future agreements. That inevitably impacts the prompt and efficient administration of cases. If debtors can unilaterally remake the terms of their stipulations, such agreements would naturally fall into disfavor. Such an outcome would significantly impact the process of negotiating consensual plans and confirmation proceedings. For these reasons, setting aside a stipulation must be carefully considered, and must necessarily be used in limited circumstances.

By relinquishing possession, Hillside gave up the priority its lien might have against WB&T. All the same, Leaver agreed that Hillside would retain lien rights in the livestock that was in its possession at the time of turnover. Leaver stipulated to the grant of a security interest in the livestock that was in the possession of Hillside.

State law controls this situation. Article Nine of the Uniform Commercial Code applies to the creation of this security interest. As section 409.109 provides:

> **(1)** GENERAL SCOPE OF CHAPTER. Except as otherwise provided in subs. (3) and (4), and s. 16.63(4) on transactions involving tobacco settlement revenues, this chapter applies to:
>
> (a) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;
>
> (b) An agricultural lien;
>
> . . .
>
> **(3)** EXTENT TO WHICH CHAPTER DOES NOT APPLY. This chapter does not apply to the extent that:
>
> (a) A statute, regulation, or treaty of the United States preempts this chapter;
>
> . . .
>
> **(4)** INAPPLICABILITY OF CHAPTER. This chapter does not apply to:
>
> (a) A landlord's lien, other than an agricultural lien;
>
> (b) A lien, other than an agricultural lien, given by statute or other rule of law for services or materials, but s. 409.333 applies with respect to priority of the lien;
>
> . . . .

Wis. Stat. § 409.109.

Section 409.333 is the section that governed Hillside's lien. It provides that a possessory lien, created by statute, has priority over a security interest in goods unless the statute creating the possessory lien expressly provides otherwise. So at the time of the Stipulation, Hillside held a possessory lien on the livestock that was superior to the lien of WB&T.

7

The parties agree that the livestock is an item of "personal property" or involves an agricultural lien. The language of the Stipulation is clear that the transaction involves Leaver's interests in the livestock and it plainly says it is intended to create a security interest in the livestock. Thus, once the statutory lien of Hillside was terminated, Article Nine applies to the transaction described in the Stipulation unless it is specifically excluded by the U.C.C. itself. There is no suggestion that Article Nine is inapplicable.

It is clear from the foregoing that Article Nine governs the parties' rights in the livestock under the Stipulation. So the inquiry shifts to whether Hillside has complied with Article Nine's requirements for the attachment and perfection of its claimed security interest.

State law generally determines the nature and extent of property rights in a debtor's assets in bankruptcy. *Butner v. United States*, 440 U.S. 48, 55 (1979). Creation of a security interest begins with attachment. Wis. Stat. § 409.203(1). Although no longer defined in the Wisconsin version of the U.C.C., attachment means the creation of an enforceable security interest. It attaches to the collateral when it becomes enforceable against the debtor. *In re Friedrich*, 618 B.R. 274, 279 (Bankr. W.D. Wis. 2020), citing *Attorney's Title Guar. Fund, Inc. v. Town Bank*, 2014 WI 63, ¶28, 355 Wis. 2d 229, 850 N.W.2d 28. The security interest is enforceable against a debtor when value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. Wis. Stat. § 409.203(1).

A security interest is then enforceable against the debtor and third parties when the following events have occurred:

> (a) Value has been given;
>
> (b) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
> (c) One of the following conditions is met:
>
> 1. The debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
>
> 2. The collateral is not a certificated security and is in the possession of the secured party under s. 409.313 pursuant to the debtor's security agreement;
>
> . . . .

Wis. Stat. § 409.203(2)(a)-(c). Upon attachment, the security interest is valid and enforceable as between the debtor and the secured party. Wis. Stat. § 409.203(1).

Under Wisconsin Statutes § 409.108, "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." Wis. Stat. § 409.108(1). Section 409.108 then provides examples of reasonable identification:

> Except as otherwise provided in sub. (4), a description of collateral reasonably identifies the collateral if it identifies the collateral by:
>
> (a) Specific listing;
>
> (b) Category;
>
> (c) Except as otherwise provided in sub. (5), a type of collateral defined in chs. 401 to 411;

9

  (d) Quantity;

  (e) Computational or allocational formula or procedure; or

  (f) Except as otherwise provided in sub. (3), any other method, if the identity of the collateral is objectively determinable.

Wis. Stat. § 409.108(2).

  "Supergeneric" descriptions are not sufficient: "A description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral." Wis. Stat. § 409.108(3). But this is not immutable. In *Milwaukee Mack Sales, Inc. v. First Wisconsin Nat'l Bank,* the Wisconsin Supreme Court held that a broad description of after-acquired property satisfied the description requirement. *Milwaukee Mack Sales, Inc. v. First Wisconsin Nat'l Bank,* 93 Wis. 2d 589, 287 N.W.2d 708 (1980). The court held that the word "equipment" used in a security agreement granting the bank a "security interest in all Debtor's equipment . . . . whether now owned or hereafter acquired" was sufficient to give the bank a security interest in the debtor's after-acquired truck. *Id.* at 592. The court explained that,

> "[I]f we are to carry out the draftsmen's intention and permit the secured creditor to claim a perfected security interest in after acquired property, comparatively general descriptions of the collateral must suffice for it would be impossible in most such cases for the secured creditor to describe the collateral with any greater precision at the beginning of the agreement."

*Id.* at 599 (quoting White and Summers, *Unif. Commercial Code* § 23-3 (Hornbook Series 1972)).

The court did not distinguish the standard for sufficiency in a security agreement as opposed to a financing statement. Indeed, the court favorably cited White and Summers' conclusion that the description requirements for security agreements and financing statements should be evaluated under the same broad standard despite the different purposes of the documents:

> "The two description requirements are intended to perform different functions . . . . The function of 9-203 [regarding security agreements] is that of a statute of frauds; it is designed to minimize disputes between parties to the transaction over whether an agreement exists and over whether a certain item of collateral is or is not included in the security agreement. The function of the description in 9-402 [regarding financing statements] is to put third parties on notice of the secured creditor's claim."

*Id.* at 597-98 (quoting White and Summers, *Unif. Commercial Code* § 23-3.]

Despite these differences, White and Summers conclude "that the standards under 9-203 and 9-402 should not be different and that courts should validate rather broad descriptions under either of them." *Milwaukee Mack,* at 597-98 (quoting White and Summers, *Unif. Commercial Code* § 23-3).

In their treatise on the U.C.C., Professors White and Summers have set out a two-step analysis for determining the sufficiency of a description of collateral: first it should be determined whether the claimed property fits within a broad reading of the descriptive language, and then the court should consider the factual question of what the parties intended. White, Summers & Hillman, *Unif. Commercial Code* § 31-3 (6th ed.). The court in *Milwaukee Mack* took the same approach. First, the court determined that trucks objectively fit within a broad reading of the category of equipment. Then the court examined the intent of the parties. The court looked to a stipulation by the parties about

11

the sale of the truck, which stated that the truck was being sold to the debtor "for use as equipment . . . in its trucking business" and determined that "in the framework of these transactions, the parties appropriately considered the truck as 'equipment.'" *Id.* at 600.

The description here reasonably identified the collateral as "animals in [Hillside's] possession owned by Leaver." The collateral was objectively determinable when the Stipulation was signed. *Tandy Credit Corp. v. Martinez (In re Martinez),* 179 B.R. 90, 94 (Bankr. N.D. Ill. 1994) (The reference to "all merchandise charged to your account" was sufficiently specific.). A description of personal property is adequate if it reasonably identifies what is described. U.C.C. § 9-110; *In re Legal Data Systems, Inc.,* 135 B.R. 199, 201 (Bankr. D. Mass. 1991); *In re Niles,* 72 B.R. 84, 85-86 (Bankr. N.D. Ill. 1987); *In re Ziluck,* 139 B.R. 44, 46 (S.D. Fla. 1992); *In re Keneco Financial Group, Inc.,* 131 B.R. 90, 92 (Bankr. N.D. Ill. 1991) (phrase "all inventory, chattel paper, accounts, contract rights, equipment and general intangibles" satisfied the specificity requirement); *In re Elia,* 18 B.R. 89 (Bankr. W.D. Pa. 1982) (phrase "all goods purchased under this account" fulfills the condition).

There is no serious dispute about attachment at the time the livestock was in Hillside's possession. The collateral was described as the livestock in the possession of Hillside. It would have been possible to look for and identify the livestock. Leaver had rights in the livestock. Hillside had a statutory lien on the livestock for the amounts owed it. This then leaves whether there was consideration.

12

Section 401.204 tells us that:

> [A] person gives value for rights if the person acquires them under any of the following circumstances:
>
> . . . .
>
> (4) In return for any consideration sufficient to support a simple contract.

Under Wisconsin law, consideration "may consist of a detriment to the promisee or a benefit to the promisor." *First Wis. Nat'l Bank v. Oby,* 52 Wis. 2d 1, 6, 188 N.W.2d 454 (1971). As for the "benefit to the promisor" prong of this definition, the Wisconsin Supreme Court has quoted the following:

> "[A]ny benefit, profit or advantage flowing to the promisor which he would not have received but for the contract constitutes a sufficient consideration therefor. It is not necessary, however, that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made,. . . and that the promise is the inducement to the transaction."

*Id.* at 6 n.1, 188 N.W.2d 454 (quoting 17 C.J.S. *Contracts* § 74 at 757–61). As to the "detriment to the promisee" prong, the Court quoted the following from Professor Williston's treatise:

> "[I]t would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or inconvenience, and which he was not obligated to perform."

*Oby,* 52 Wis.2d at 5-6, 188 N.W.2d 454 (quoting W. Jaeger, *1 Williston on Contracts* § 102A at 380 (3d ed. 1957)). The treatise elsewhere states that the proposition that "a detriment suffered by the promisee at the promisor's request and as the price for the promise is sufficient, though the promisor is

not benefited, is well settled." W. Jaeger, *1 Williston on Contracts* § 102 at 377 (3d ed. 1957).

There was value given. Hillside had possession of the livestock and its associated value. It was a detriment to Hillside to relinquish possession because it released something of value available to use to reduce the amounts owed to it. Further, there was a benefit to Leaver (and WB&T) because he obtained possession of the livestock free of Hillside's possessory lien.

The inquiry now turns to whether Hillside's security interest was perfected. "As did former Section 9-301, this section [409.317] lists the classes of persons who take priority over, or take free of, an unperfected security interest. A security interest that has attached (see Section 9-203) but as to which a required perfection step has not been taken is 'unperfected.'" *Uniform Commercial Code* Comment 2, Section 9-317. Section 9-308 explains when a security interest or agricultural lien is "perfected." A security interest that has attached (*see* Section 9-203) but as to which a required perfection step has not been taken, is "unperfected." Section 409.322, Wis. Stats., states general rules for determining priority among conflicting security interests and refers to other sections that state special rules of priority in a variety of situations. "The security interests given priority under Section 9-322 and the other sections to which it refers take priority in general even over a perfected security interest. *A fortiori* they take priority over an unperfected security interest." *Uniform Commercial Code* Comment 3, Section 409.317. Excluding those instances in which a security interest is deemed to be perfected upon attachment and

14

without further action by the secured party, the "steps required for perfection" under Article Nine are either the filing of a financing statement in the appropriate public office, *see* Wis. Stat. § 409.302 and 409.310, or the secured party taking possession of the collateral, *see id.* § 409.313.

A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Wis. Stat. §§ 409.309 and 409.308.

Hillside was secured on the petition date because of its statutory possessory lien. Sections 409.308, 409.310, and 409.310(2)(d) obviated the need to describe the collateral while it was in possession of Hillside. White, Summers & Hillman, *Unif. Commercial Code* § 31:5 (6th ed.) Leaver and Hillside agreed Hillside's lien would continue post-petition and sought to memorialize that lien in the Stipulation. At the time of the grant in the Stipulation, there was attachment because Hillside had possession of the livestock in question. So the function of a description to "minimize disputes between parties to the transaction over whether an agreement exists and over whether a certain item of collateral is or is not included in the security agreement" was satisfied. *Id.*

But because possession was relinquished, the function of the description requirement in section 409.310(1) [regarding financing statements] to put third parties on notice of the secured creditor's claim is not met. And when possession was surrendered by Hillside, perfection was lost.

15

The parties filed their Stipulation. They requested an order approving the Stipulation and one was entered. Neither the Stipulation nor any motion, however, included provision for post-petition perfection of the lien that was being granted. Section 364(a) permits a debtor to "obtain unsecured credit and incur unsecured debt in the ordinary course of business . . . as an administrative expense." If the debtor cannot obtain unsecured credit as an administrative expense, then after notice and hearing the court may authorize debt:

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). In this case, there is a further provision in play. WB&T held a lien on all of Leaver's assets including the livestock. As a result, the lien in the Stipulation would have been a junior lien unless there was a request under section 364(d)(1) that it be a senior or equal lien on the livestock to that of WB&T.

The parties did not ask the Court to treat the Stipulation as a motion to approve credit that would be secured by a lien either junior, equal, or senior to the lien of WB&T. Nor did the Stipulation contain provision for automatic perfection of a lien. It did not provide or ask the Court to order that the lien was deemed perfected by entry of the Order of the Court without any further act, filing, or notice by Hillside.

There was, apparently, some dispute between Leaver and Hillside about the amount owed. Leaver wanted possession of the livestock for his operation. Hillside wanted to be paid what it says was owed. The Stipulation may, thus, have been a compromise or settlement of a dispute. If the parties filed a motion under F.R.B.P. 9019 and clarified the position of the lien or that the lien would be deemed perfected upon entry of an order, that may have addressed the question of perfection and whether the claim of Hillside is secured. The failure to obtain a Court order deeming perfection or authorizing the credit given by Hillside leads to only one result. Hillside's claim in this case is not secured by a perfected security interest.

### B. ADMINISTRATIVE EXPENSE CLAIM

Section 503(b) covers what constitutes an administrative expense claim. Administrative expense claims include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "[W]hen third parties are induced to supply goods or services to the debtor-in-possession . . . the purposes of [§ 503] plainly require that their claims be afforded priority." *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984).

Whether Hillside's claim has a right to receive priority as an administrative expense claim is less clear.

There are cases that support enforcement of stipulations relating to plan treatment. *See Holmes v. Potter*, 552 F.3d 536, 538 (7th Cir. 2008); *In re Garrett*, 494 B.R. 336 (Bankr. N.D. Ill. 2013) ("Federal courts have the power to enforce settlement agreements if there is a jurisdictional basis to do so."). Still,

17

those cases do not address stipulations for plan treatment where the Code would be violated. In fact, at least one court has found that a Code-violating provision in an agreement would not be enforced. *See In re Chicago Invs., LLC*, 470 B.R. 32 (Bankr. D. Mass. 2012). As a result, the Stipulation can be enforced only to the extent it comports with the Code.

It would appear from *Jartran* that because the Stipulation facilitated the return of the cattle to permit Leaver to continue his business operations, the claim could be considered an "actual and necessary" expense for the "benefit of the estate." The Seventh Circuit in *Jartran* reasoned:

> When third parties are induced to supply goods or services to the debtor-in-possession . . . the purposes of [§ 503] plainly require that their claims be afforded priority.

*In re Jartran, Inc.*, 732 F.2d at 586 (internal quotation omitted).

Here, the transaction occurred post-petition and the return of the collateral was beneficial to Leaver's operation of the business. The transaction—surrender of possession—placed all of Leaver's livestock in his possession. Leaver induced Hillside to turn over the collateral. Hillside did so. As a result, according to Debtor's schedules, $119,000 in livestock came into his possession, free of Hillside's possessory lien, and increased the value of the collateral subject to the WB&T lien. Hillside was induced to release its possessory lien in exchange for a substitute lien and administrative expense claim treatment. Leaver incurred an actual and necessary expense of preserving of the estate as required by 11 U.S.C. § 503(b)(1)(A) for treatment of an administrative expense by providing Hillside a lien and administrative

expense claim. The surrender of the livestock to Leaver permitted him possession of animals necessary for the operation of his business. There was an equal detriment to Hillside due to relinquishing its possessory lien. Further, for at least some time period post-petition, Hillside performed services for the care, feeding, and preservation of the property of the estate in its possession.

The value of the livestock that was in Hillside's possession on the petition date is in excess of any claim amount asserted by Hillside. That was the value of its secured claim on the petition date and before Hillside relinquished possession. Hillside is entitled to an administrative expense claim for its entire claim. The amount of that claim is in dispute and will be subject to determination in a further hearing.

## CONCLUSION

Hillside relinquished its secured claim when it surrendered possession. To the extent that Hillside's claim relates to post-petition expenses, Hillside is entitled to an administrative expense claim for that amount. Further, to the extent that Hillside's pre-petition claim meets the sections of 11 U.S.C. § 503(b), Hillside is entitled to an administrative expense claim for that amount. The amount of the administrative expense claim is subject to further hearing and determination.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: March 24, 2021

                              BY THE COURT:

                              Hon. Catherine J. Furay
                              U.S. Bankruptcy Judge